KATHRYN N. NESTER, Federal Public Defender (#13967)
KENT R. HART, Research and Writing Attorney (#6242)
**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF UTAH**
Attorneys for Robert Edward Keller
46 West Broadway, Suite 110
Salt Lake City, Utah  84101
Telephone: (801) 524-4010
_____

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT EDWARD KELLER,<br><br>Defendant. | **DEFENDANT'S POSITION WITH REGARD TO SENTENCING FACTORS AND SENTENCING MEMORANDUM**<br><br>Case No. 2:14 CR 174<br><br>Honorable Evelyn J. Furse |

Defendant Robert Edward Keller files this memorandum in response to the

presentence investigation report ("PSR") as provided for under District Court Rule 32-1.

More specifically, Mr. Keller objects to one section of the PSR that details an unfounded

and misplaced allegation which Mr. Keller denies.  He also amplifies the severe abuse

that that he suffered as a child and which has adversely affected him through his

adulthood.  He also welcomes any additional treatment that this Court deems appropriate

and clarifies some his comments about his future plans to relocate to Nevada.

## OBJECTION TO THE PRESENTENCE EREPORT

The bulk of paragraph 11 should be stricken form the PSR because it falsely attributes actions to Mr. Keller that he did not commit.  That section details an incident from two to three years ago in which an anonymous person placed a hateful letter on the front windshield of a car that belonged to a neighbor of Mr. Keller.  This neighbor, M.C., is a mixed race woman who lived near Mr. Keller.  M.C. believed that her roommate's ex-boyfriend had left the letter because he was angry about the breakup of the relationship with the roommate.  M.C. never reported the incident to police.

Neither M.C. nor the PSR specifically accuse Mr. Keller of writing the letter but both imply, without any factual basis, that he was the author.  M.C. relates a separate incident in which Mr. Keller yelled at some of M.C.'s roommates because they were playing loud music.  According to M.C., Mr. Keller ordered the roommates to turn down their "fucking nigger music."  In addition, M.C. claimed that Mr. Keller would glare at her, give her "bad looks," and "give her the middle finger" when he saw her.  Based on these actions, M.C. and the PSR appear to infer that Mr. Keller wrote the letter that was left on M.C.'s windshield.

The incident involving the letter amounts to sheer speculation and should not be a consideration during sentencing proceedings.  Mr. Keller has no memory of M.C., directing any negative looks toward her, flipping her off, or yelling at her roommates. But, even if he did engage in any of these actions, they provide no evidence that he

2

placed a letter on M.C.'s windshield.  To be absolutely clear, Mr. Keller denies ever writing a letter to M.C. or placing it on her car.

Absent some supporting evidence, this court should strike the allegations involving the letter and M.C.  At sentencing, the government has the burden of proving facts by a "preponderance of the evidence." *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011).  Rather, sentences must be based on "accurate and reliable information" as opposed to inferences based on unsupported or unfounded assumptions.  *United States v. Golightly*, 811 F.2d 1366, 1367 (10th Cir. 1987).  Here, Mr. Keller denies ever showing any animosity to M.C. including flipping her off, glaring at her, or yelling at her roommates. He does not remember this person or doing anything of the kind to someone else.  Nevertheless, given that M.C. identified Mr. Keller's residence as the home where the person lived, Mr. Keller assumes the truth of the allegations for purposes of this proceeding.

The government presents no evidence that Mr. Keller placed a letter on M.C.'s car windshield.  Thus, no basis supports any inference to the contrary.  First of all, the rude and hateful actions that M.C.'s claims that Mr. Keller exhibited toward her are entirely separate from the letter she received.  The government identifies no connection between the incidents and cannot prove otherwise even under the relatively modest preponderance of the evidence standard.  "[E]vidence that is speculative, unsupported, and unreliable" such as the claims presented here fails to rise to the level of a preponderance standard.

3

*Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014) (internal quotation omitted). Thus, this court should disregard the allegations involving the letter given to M.C.

Further, even M.C. never suspected Mr. Keller of leaving the letter for her until investigators in this case suggested that possibility to her. To the contrary, for the past few years, M.C. believed that her roommate's former boyfriend left the note. She only raised the possibility of Mr. Keller's involved when the investigation in this case suggested that idea to her. But, an unsupported suggestion is no better than mere speculation and does not establish reliable evidence upon which to base a sentence. *Golightly*, 811 F.2d at 1367. This Court should reject any implication that Mr. Keller was involved with M.C.'s letter in any way.

## CLARIFICATIONS ABOUT MR. KEELER'S PLANS AND ABSUIVE CHILDHOOD

Mr. Keller would also like to clarify some of the statements he made to the author of the PSR about his history of severe childhood abuse and his plans for the future, including his willingness to participate in further counseling sessions. The author of the PSR has agreed to amend the report to include a more detailed summary of the repeated, prolonged, violent abuse that he suffered as a child. Rather than duplicating that history here, Mr. Keller reminds this Court that the counseling that he has received has shown a link between the repeated rejection, violence, and deprivation that he suffered as a child

and the anger issues that influenced the criminal behavior at issue in this case.  Both Mr. Keller and the counselor who met with him report that his latent anger and abuse significantly contributed to Mr. Keller's hurtful actions in this case.  But, the therapy that Mr. Keller has received has caused him to recognize the anger that he has harbored throughout his life and that has lingered into his adulthood.  Now that he has addressed those unresolved issues, Mr. Keller has gained personal insight and is far less inclined to act out.

Given the introspection and insight that counseling has provided Mr. Keller, he would welcome any additional treatment that this court might order.  The PSR indicates some reluctance by Mr. Keller to participate in additional mental health counseling given his painful past.  Nevertheless, he recognizes that he may need further professional help to address the anger that has resulted from the neglect, abuse, and abandonment that he suffered as a child.  Although additional treatment would be painful and difficult , Mr. Keller welcomes any further treatment as directed by this Court.

Finally, Mr. Keller would like to address the PSR's authors concerns about his plans move to Mesquite, Arizona.  The author expressed reservations about Mr. Keller moving there because of his lack of ties to Mesquite, the absence of family members living nearby, and the accompanying stress that might result from having to gain new friends.  To clarify, Mr. Keller is familiar with the Mesquite area and has friends there. He regularly golfs in that city and knows people who live there.  Further, Mesquite is a

5

short drive from St. George where several other friends reside.  Mr. Keller has a social

network in both St. George and Mesquite and believes that he would thrive in the

Mesquite area.

## CONCLUSION

In the absence of any evidence that Mr. Keller ever left a threatening letter on

M.C.'s car, any reference of that incident should be stricken from the PSR.  Further, Mr.

Keller would welcome any additional counseling that this Court deems appropriate.  He

requests this Court to allow him to relocate to Mesquite, Nevada where he has friends and

would thrive both personally and socially.

Dated this 17th day of November, 2014.


*/S/ Kent R. Hart*
Kent R. Hart
**Attorney for Mr. Keller**

6